## Ferguson's Estate.

*Wills—Surplus income—Annuities—Remainders—Charity.*

Where a testator gives an annuity for an amount of income named to each of his daughters for life, and upon the death of either the surplus income to two charities, and upon the death of both daughters to their children for their lives, with an ultimate gift of the principal to the two charities, the two daughters, until the decease of one of them, are entitled to all the surplus income, share and share alike, either by an implied gift, or under the intestate laws.

Argued Jan. 6, 1909. Appeal, No. 161, Jan. T., 1908, by The Presbyterian Hospital in Philadelphia, from decree of O. C. Phila. Co., July T., 1907, No. 199, dismissing exceptions to adjudication in Estate of Charles Ferguson, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

Testator's will provided as follows:

"I give the residue of my estate to my Executors and Trustees In Trust to pay the said income to my two daughters Frances Ferguson and Esther F. Mears, in equal parts and shares in each one of those years in which the whole of the remainder of said income does not exceed Eighteen thousand Dollars, and to pay the sum of Eighteen thousand Dollars to my said two daughters that is to say Nine thousand Dollars to each one of them in each one of those other years in which the said remainder of the said income does exceed the sum of Eighteen thousand Dollars for and during all the respective terms of their natural lives . . . . and I direct my said Executors and Trustees to make up and pay to my said daughters the deficiency of income below Eighteen thousand Dollars of any one year or years out of the surplus income above Eighteen thousand Dollars if any of any subsequent year or years, so that my said two daughters shall if possible receive Eighteen thousand Dollars between them, that is Nine thousand Dollars to each one for each and every year of their lives."

Then follows a provision for the case of a daughter dying without issue surviving her, in which event the surviving daughter is to receive $9,000 per annum; out of the surplus of each year is to be made good any deficiencies of income below $9,000 in all previous years, and principal is to be reimbursed for any payments for municipal claims and certain extraordinary expenses, and then the testator provides: "and if after paying back to my residuary estate all the above items there should still be part of said surplus income left in any of the aforesaid years, then to pay the whole of the said surplus income as follows: one-third to the American (changed by codicil to New England) Antivivisection Society now located at No. 1530 Chestnut Street and the remaining two-thirds to 'The Presbyterian Hospital in the City of Philadelphia.'"

Then follows a provision for the case of a daughter dying leaving children living at the testator's death. There were in fact two such children, a son and daughter of Mrs. Mears. These children are to receive each an annuity to be ascertained by dividing the whole income of one-half of the residuary estate into as many shares as there may be such children, not in any event to exceed $4,000 to each child, and to hold the surplus income as part of the residuary estate. In case of the death of the children before their mother, then after her death the trustees are directed to pay income, not to exceed $9,000 in any one year, to the other daughter if she should be then living; "and one-third of any surplus income shall be paid to the said the American (New England) Antivivisection Society, and two-thirds thereof to the said 'The Presbyterian Hospital in the City of Philadelphia.'

"And upon this further trust after the deaths of my said two daughters and their hereinbefore specified children and after the death of my sister-in-law Matilda W. Symington then to pay over convey and assign the whole of the remaining principal and undivided income of my said residuary estate to the Society and the Hospital hereinbefore mentioned in the proportions hereinbefore set forth concerning the surplus income."

By a codicil the testator provided as follows:

"I hereby give to my daughter Frances Ferguson full power

to dispose of, by her will, that portion of the principal of my residuary estate of which she is to receive the income during her life, anything in the foregoing will and codicil thereto to the contrary thereof notwithstanding, but if my said daughter Frances should not dispose of the same by her will, then that portion of my estate shall go, at her death as directed in my said will and the codicils thereto."

At the adjudication both daughters were living, and the auditing judge awarded surplus income to them.

On exceptions PENROSE, J., filed the following opinion:

Accumulation for charitable purposes is not regulated or forbidden by any statute, and except so far as affected by the rule against perpetuities, no restraint is placed upon it; in the present case, however, the question is not as to the capacity of exceptants to take, but whether any present gift has been made to them by the testator. This is a question of intention, purely, to be determined from the language of the will in its entirety, unaffected by the meritorious character of the claimants.

The residuary estate, real and personal, is given in trust during the lives of the two daughters of the testator—his only children—and the charities claiming surplus income are not mentioned by him at all, in the will or codicils, until he makes provision for the disposition of the estate at the death of one of the daughters without issue, should that event occur, viz.: "and in case either of my said daughters shall die either before me or after, leaving no issue surviving her, then . . . . to pay to my surviving daughter the sum of $9,000 in each one of those years during her lifetime, in which the whole of the said remaining income shall amount to more than $9,000 . . . . and if after paying back to my residuary estate all of the above items there should still be part of such surplus income left in any of the aforesaid years, then to pay the whole of the said surplus income . . . . one-third to the . . . . Antivivisection Society . . . . and . . . . two-thirds to The Presbyterian Hospital."

This is followed by a provision for the children of a daughter, if any, and for the disposition of the surplus income in that

event: "And if . . . . there should be any such, I direct my executors . . . . to hold such surplus income as part of the principal of the whole residuary estate. And in case all of such children of either of my daughters should die before their mother, then after her death my executor . . . . shall pay the whole income from my then residuary estate, not, however, to exceed the sum of $9,000 in any one year, to my other daughter should she then be living . . . . and one-third of any surplus income to the . . . . Antivivisection Society . . . . and two-thirds thereof to The Presbyterian Hospital," the remaining "principal and income" being given to them in the same proportions after the death of the daughters and their children, subject, however, to a testamentary power, given by a codicil to one of the daughters, "to dispose of . . . . that portion of the principal of the residuary estate of which she is to receive the income for life."

The will contains no direction for accumulation during the lives of the daughters, and both of them are still living.

It thus appears that the gifts to the charities are only by way of remainder, taking effect at the death of one of the present cestui que trusts for life, and subject, moreover, to be divested, in part, by the exercise of the power of appointment. Future gifts—and especially those so subject—are not accelerated even by an express illegal direction to accumulate, no matter what may be the meritorious character of the intended beneficiary. See Mitcheson's Estate, 11 W. N. C. 547; Weatherall v. Thornburgh, L. R. 8 Ch. Div. 261; Talbot v. Jevers, L. R. 20 Eq. 255; Theobald on Wills, 447, etc.

To doubt as to a claim of this character is to deny it altogether. As was said in Brendlinger v. Brendlinger, 2 Casey, 131, "He who does not claim by descent must show a written title in himself. No intention in his favor not expressed in the written will can avail him. If the expressed intention is inadequate for his purpose, the law of the land and the title of the heirs must prevail, and all doubts about its adequacy must operate to his prejudice." The auditing judge was clearly right in refusing any part of the surplus income to the charitable institutions now claiming.

Whether the daughters take the surplus income under the intestate laws or by reason of a gift to them of the beneficial ownership of the residuary estate for life is not a question of practical importance; but much can be said in support of their right in the latter capacity. A will is to be so construed, if possible, as to avoid an intestacy, and, in case of doubt, as nearly as may be in conformity with the provisions of the intestate laws. The will certainly affords indications of the testator's supposition that the daughters, so long as they should live, were the beneficial owners of the residuary estate; he provides for partition if either of them should so desire, in which event he says the real and personal estate shall be divided "into two equal shares, in such manner that the share held in trust for each daughter shall be designated and identified in writing in such manner as to distinguish it from the other portion," so that each daughter, by herself, may consent to the sale of "any portion of the share so held for her."

Then again he directs that all premiums upon policies of insurance upon the life of her husband shall be paid "out of the income of that one-half of" the estate of which his married daughter "received the income during her life:" and he provides, finally, that if the annual income to each daughter shall at any time be less than $9,000, the executors, if they "shall deem it necessary or advisable so to do," may make up the deficiency from principal.

Hence it would seem, upon the whole, that underestimating the income of his estate and supposing that it would not at any time largely exceed $18,000 yearly in addition to the annuities, etc., given to third persons, he wished to protect the daughters from their own improvidence by limiting the amount to be paid in each year to each of them to $9,000, and suffering anything beyond this to be held as a contingent fund, or "in the interest of judicious management," to meet future deficiences, as in Eberly's Appeal, 14 Outerb. 95 (decided fifteen years before the execution of the will); Schwartz's Appeal, 4 Crumr. 337; Hibbs's Estate, 28 Crumr. 217, etc. Accumulation which arises in this manner is not contrary to the Act of April 18, 1853, P. L. 503, so long as it is not intended to be permanently

withheld from the original beneficiary—such beneficiary being presently entitled to anything in excess. Surplus income of which a testator makes no disposition follows the fund or estate from which it issues (accessorium sequitur suum principale) and goes, therefore, to the person presently entitled to the beneficial ownership of such fund or estate, just as in the case of income directed to be illegally accumulated under the act of 1853: Washington's Estate, 25 P. F. Smith, 102; Stille's Appeal, 4 W. N. C. 42; Farnum's Estate, 191 Pa. 75.

As already stated, however, this is not now important, as in any aspect of the case the daughters are entitled.

The exceptions on behalf of the charities are dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*Henry P. Brown* and *John Marshall Gest*, with them *H. S. Prentiss Nichols* and *Charles H. Mathews*, for appellant.—There is the strongest presumption against intestacy if it can be prevented by a fair construction of the will: Wahl's Estate, 26 W. N. C. 249; Stille's Appeal, 4 W. N. C. 42.

If under a forced construction of the will it should be held that it directs an accumulation, or if an accumulation necessarily results from its provisions (Act of April 18, 1853, P. L. 503, sec. 9), the charities would not be adversely affected by the statute. It does not apply to charities: Curran's App., 4 Penny. 331; Lennig's Est., 154 Pa. 209.

The authorities show that surplus or accumulated income belongs to the owners of the vested estate from which the income was derived: White's Est., 8 Pa. Dist. Rep. 33; Martin's Est., 185 Pa. 51; Edwards' Est., 190 Pa. 177; Myer's Est., 17 Phila. 425; Shallcross's Est., 200 Pa. 122; Sharp's Est., 155 Pa. 289; Wahl's Est., 26 W. N. C. 249; Saunders v. Vautier, 4 Beavan, 115; Josselyn v. Josselyn, 9 Simons, 63; Coventry v. Coventry, 2 Drew & Sm. 470.

There being a present vested interest in the charities, the surplus income cannot pass under the intestate laws. It would belong to the charities, even if the statute against accumulation applied: Howell's Est., 5 W. N. C. 430; Edwards' Est.,

190 Pa. 177; Myer's Est., 17 Phila. 425; Mitcheson's Est., 11 W. N. C. 547; Mellon's Est., 16 Phila. 323; Gowen's App., 106 Pa. 288; Philadelphia v. Girard, 45 Pa. 9; Stille's App., 4 W. N. C. 42; Rogers' Est., 179 Pa. 602.

The latest English decisions rule this case favorably to the claim of the charities: Wharton v. Masterman, L. R. (1895) App. Cases, 186; Harbin v. Masterman, L. R. 2 Ch. (1894) 184; Cook's Est., 10 Pa. C. C. Rep. 465; Biddle's App., 99 Pa. 525; Talbot v. Jevers, L. R. 20 Eq. 255.

But in no event can the next of kin claim as against charities, who even in England are entitled under the cy pres doctrine: Martin v. Maugham, 14 Simons, 230; Re Swain's Case, L. R. 1 Ch. (1905) 669.

*John G. Johnson* with him *Michael J. Ryan,* for appellees.— There is no gift of surplus income to the appellant until after the decease of one of the two daughters.

The bequest in remainder to the appellant upon the decease of certain named persons, is not of the residuary estate, but "of the remaining principal," and, as to income, only of "undivided income." "Undivided income" is not surplus income.

A direction to accumulate would violate the act of 1853 because of the lack of certainty that the charities will be the ultimate beneficiaries: Dobbin's Est., 221 Pa. 249; DeRenne's Est., 12 W. N. C. 94; Chamberlayne v. Brockett, L. R. 8 Ch. App. Cases, 206; McKee's App., 96 Pa. 277.

There is an implied gift to the daughters, until the death of one of them, of the whole income.

If there is no implied gift to the daughters of the income until the decease of one of them, there is an intestacy and the daughters take: Weatherall v. Thornburgh, L. R. 8 Ch. Div. 261.

PER CURIAM, March 1, 1909:

The order appealed from is affirmed on Judge PENROSE'S opinion.