## Castner Estate.

Argued April 24, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Nathan W. Stuart,* with him *Wood, Stuart and
Murphy,* for appellant.

*Don L. Larrabee,* with him *Clinton W. Smith,* for
appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, Octo-
ber 11, 1963:

The issue on this appeal is whether income, unlawfully accumulated under the Act of 1853 (Act),[1] is distributable to the residuary legatees under the instant will (grandchildren et al.) or to testator's next-of-kin under the intestate laws (testator's three children and the personal representatives of his two deceased children).

Lewis M. Castner (testator) died January 1, 1932, survived by his wife and five children. Under his will, he gave the "rest, residue and remainder" of his estate to the First National Bank of Williamsport (trustee) in trust for the following purposes: (1) to distribute from the "net income" of the "residuary estate" certain specific sums of money, annually, to his wife, three of his children and his sister during their lives; (2) on the wife's death or remarriage, her share of the income was to be proportionately divided among the other three named life beneficiaries, excluding his sister; (3) on the death of "any other" beneficiary, the share of the income of such beneficiary was to go to his or her issue, and, in default of such issue, to the testator's remaining children in proportion to the specific amounts of income given such children under the trust; (4) if the residuary estate should yield "more income than necessary to pay the amounts allowed [his] beneficiaries under [the] trust," the "excess" was to be reinvested and "held to make up any prior or subsequent shortage in such payments, and if not required for that purpose shall be distributed at the termination of the trust in the same manner as the corpus of the trust funds"; (5) the trust was to continue "during the lives of [testator's] wife and [his] children above named, and thereafter until [his] youngest grandchild living at the time of [his] death, arrives at the age of twenty-one (21) years"; (6) upon

---

[1] The applicable statute is the Act of April 18, 1853, P. L. 503, §9, as amended, 20 PS §3251.

the termination of the trust, the trustee was to distribute the "whole of [his] residuary estate, including undistributed income thereof, among all [his] grandchildren, in equal shares, the share of any deceased grandchild to be paid to his or her issue, if any, otherwise to lapse."

On October 28, 1960, the trustee filed its first and partial account in the Orphans' Court of Lycoming County and requested a determination of the question of the distribution of the balance of accumulated income in its hands, then amounting to $59,677.27. The matter was referred to an auditor. Being of the opinion that the residuary legatees had "an immediate right of possession of the remainder interest if the prior estates were presently terminated", that the "unlawful accumulations represent[ed] a part of the estate that is no longer affected by the life estates" and that, as to the accumulated income, the trust had terminated, the auditor concluded that the balance of the accumulated income should be distributed to the residuary legatees.

The Orphans' Court of Lycoming County held that the residuary legatees did not have such a vested interest as took effect in immediate possession, that, as to the accumulated income, the testator died intestate and that the testator's next of kin[2] under the intestate laws were entitled to distribution of the accumulated income. From that decree this appeal was taken.

All parties agree that the accumulation of income under the provisions of this will violates Section 9 of the Act and our sole inquiry is to whom such illegally accumulated income should now be distributed. Section 9 provides that income unlawfully accumulated "shall go to and be received by such person or per-

---

[2] Distribution would be of personalty.

sons as would have been entitled thereto if such accumulation had not been directed. . . ." "The inquiry, therefore, must, in the first instance, always be, who, under the provisions of the will, as fairly interpreted, such persons are:" *Martin's Estate,* 185 Pa. 51, 53, 39 Atl. 841.

The residuary legatees contend that, since by the provisions of the will the life beneficiaries are restricted and limited to the specific amounts of the net income which they were bequeathed, as to any surplus income, i.e., income accumulated over the years, only the residuary legatees, whose interest in the accumulated income becomes accelerated as to time of taking, are entitled to a distribution.[3]  The next of kin contend that neither the life beneficiaries nor the residuary legatees can take, the latter because they lack an immediate interest in possession and the illegal provisions as to accumulations are part of the residuary clause of the will and, therefore, as to the accumulated income, an intestacy occurred.[4]

In this area of the law, *White's Estate,* 8 Dist. 33, written by the very able Judge PENROSE, has become recognized as a landmark case.[5]  In *White's Es-*

---

[3] From an examination of the will there is no doubt that the testator intended the accumulated income to be distributed in the same manner as the corpus of the trust, However, as we said in *Hibbs' Estate,* 143 Pa. 217, 224, 22 Atl. 882, ". . . the manifest purpose of the testator was to add such accumulations [of income] permanently to, and make them take the destination of the original trust-estate [citing cases] . . ." and such class of cases comes "plainly within the prohibition of the statute; . . ." See also: *Edwards's Estate,* 190 Pa. 177, 181, 42 Atl. 469.

[4] A construction which will avoid an intestacy is always preferred if such result can be reached by any fair interpretation of the will: *Bonham Estate,* 393 Pa. 355, 143 A. 2d 50; *Frambes Estate,* 382 Pa. 398, 115 A. 2d 165.

[5] See: *Weinmann's Estate,* 223 Pa. 508, 510, 72 Atl. 806; *Neel's Estate,* 252 Pa. 394, 409, 412, 97 Atl. 502; *Thistle's Estate,* 263 Pa. 60, 66, 106 Atl. 94; *Maris's Estate,* 301 Pa. 20, 25, 151 Atl. 577.

*tate,* the following rule was enunciated: "Accumulation is forbidden by the act no less where it results by indirection than where it is expressly ordered; the striking down of the illegal accumulation leaves the will as if it had been silent on the subject, and future gifts are not accelerated; if the accumulation relates to a vested interest taking effect in possession, the released income goes at once to the beneficiary [of that interest but] if [the accumulation relates] to an interest not vested in possession, the income goes to the residuary legatee or devisee, unless the residuary estate itself be the subject of the provision, in which case the income goes under the intestate laws to the next of kin or heirs." This rule has been generally accepted as a reliable guide in determining the appropriate disposition of accumulated income which, by reason of a violation of the Act, has become released or liberated income.

*Maris's Estate,* 301 Pa. 20, 151 Atl. 577 is an example of a situation falling within the first part of this rule. In *Maris's Estate* the widow by the terms of the will was given during her life the "net income" absolutely; she thereby became entitled to *all* the income arising from the corpus of the trust and became vested with an equitable life interest in the income-producing corpus which, upon the death of the testator, took effect in immediate possession; under such circumstances, the widow became entitled to distribution of any income unlawfully accumulated. By way of contrast, the life beneficiaries in the case at bar acquired an interest in the net income only to the extent of the specific amounts of income provided for them and they totally lack any interest in any surplus income over and above the specified amounts; the interest of the residuary legatees in the corpus and the accumulat-

---

[6] As specifically provided in this trust, the residuary legatees took an interest in the income.

ed income,[6] even though such interest be considered vested,[7] takes effect in possession and enjoyment only upon the happening of a future event, i.e., the death of all the life beneficiaries and the arrival at age 21 of the youngest grandchild. Neither the life beneficiaries nor the residuary legatees have any interest which takes effect in immediate possession such as would bring them within the first part of the rule and thus entitle them to a distribution of the released income.

Under the second part of the rule, applicable only if the accumulations relate "to an interest not vested in possession", the accumulated income goes to the residuary legatees only if the residuary estate is not the subject of the unlawful provisions providing for the accumulation of income. *Thistle's Estate,*[8] supra, is illustrative of a situation where the residuary legatees lacked an interest taking effect in possession and the provision offending against the accumulation provision of the Act was contained in the residuary clause and the residuary legatees were held barred from receiving distribution of the released income. The instant factual situation is clearly within the second part of the rule. In the phraseology of that part of the rule, the accumulation relates "to an interest not vested in possession" and "the residuary estate itself [is] the subject of the [accumulation] provisions", therefore "the income goes under the intestate laws to the next of kin."

Furthermore, here the testator directed distribution of the corpus of his residuary estate "among all [his] grandchildren, in equal shares, the share of any deceased grandchild to be paid to his or her

---

[7] "The fact that the legacies are vested is not conclusive of the right to accumulations in the meantime": *Billings's Estate (No. 2),* 268 Pa. 71, 76, 110 Atl. 768.

[8] See also: *Edwards's Estate,* 190 Pa. 177, 42 Atl. 469; *Neel's Estate,* supra; *Billings's Estate (No. 2),* 268, Pa. 71, 110 Atl. 768.

issue, if any, otherwise to lapse". Until the termination of this trust—an event to take place in the future—those persons who will take the trust corpus cannot be established; only the death of all the life beneficiaries and the arrival of the youngest grandchild at age 21 will mark the time when the identity of such persons can be established and the eventual distributees of the corpus ascertained. Under such circumstances to whom, as residuary legatees, could the released income be *now* distributed? In *Rhodes' Estate,* 147 Pa. 227, 23 Atl. 553, we adopted the language of Judge PENROSE: "[The accumulated income] could not go to the residuary legatees, for their rights do not begin, nor, indeed, are they themselves ascertained, until the death of the tenants for life; it could not be held in the meantime, for accumulation, directly or indirectly, is forbidden [by the statute]. . . . Necessarily, therefore, not having been disposed of by the testator, it passed under the intestate laws." See also: *Martin's Estate,* 185 Pa. 51, 53, 39 Atl. 841; *Edwards's Estate,* supra, 181; *Sternbergh's Estate,* 250 Pa. 167, 171, 95 Atl. 404.

Accumulation of this income must cease in response to the legislative declaration of the illegality of such an accumulation. The balance of the accumulated income cannot be distributed under the will because (a) the life beneficiaries are specifically limited and restricted in amount to the portion of the income which they may take and (b) the residuary legatees lack any right to possession or enjoyment of their interest until the happening of a future event, i.e., the termination of the trust, and the provisions as to accumulations are included in the residuary grant. Distribution of the accumulated income must, therefore, be made under the statute to "such person or persons as would have been entitled thereto if such accumulation had not been directed"; under the factual situa-

tion in the case at bar, the statute can only be interpreted to mean the next of kin of testator under the intestate laws.

In arriving at this conclusion we are mindful that in this will testator specifically directed that any accumulated income undistributed at the time of termination of the trust should be distributed in the same manner as the corpus of the trust and that he further directed that the trustee distribute to the residuary legatees in equal shares "the whole of [his] residuary estate, including undistributed income thereof" and we agree with the court below "that the testator probably intended that the grandchildren should receive the residuary of the trust estate . . . ." However, as we stated in *Howell's Estate*, 180 Pa. 515, 519, 37 Atl. 181: ". . . when the policy of the law is violated by a direction to accumulate no effect should be given to the intention of the testator, and the distribution should be in accordance with the statute without regard to the will."[9]

Our examination of the provisions of this will and those of the Act convinces us that the only conclusion possible is that distribution of the accumulated income must be made to testator's next-of-kin under the intestate laws.

Decree affirmed. Costs to be paid by the estate.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Striking down the unlawful accumulation does not compel the conclusion reached by the majority, a result which unnecessarily frustrates the intention of the decedent and defeats his plan of distribution.

———

[9] See also: *Washington's Estate*, 75 Pa. 102; *McKee's Appeal*, 96 Pa. 277; *Carson's Appeal*, 99 Pa. 325; *Grim's Appeal*, 109 Pa. 391; *Schwartz's Appeal*, 119 Pa. 337, 13 Atl. 212.

Testator created a trust for the duration of the lives of his wife and children and "thereafter until my youngest grandchild living at the time of my death, arrives at the age of twenty-one (21) years." He directed that his wife and children, as life income beneficiaries, receive certain stipulated sums annually, and upon the death of all life beneficiaries, he directed distribution to his grandchildren of the "whole of my residuary estate."

During the thirty years following testator's death, income in excess of that required to pay the designated annuities to his life beneficiaries accumulated. It is conceded that since any one of the life beneficiaries could have lived (in fact two are still living) beyond twenty-one years following testator's death, and since the trust did not give them either the accumulated income or the principal which earned that income, the accumulations of income during the life of the annuitants are unlawful under the Act of 1853.[1]

In such event, the Act mandates that unlawful accumulated income "shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed . . . ." The provision creating the unlawful accumulation is void, and the will must be read and construed " 'as if it had been silent on the subject . . . .' " *Thistle's Estate,* 263 Pa. 60, 66, 106 Atl. 94, 96 (1919), quoting from *White's Estate,* 8 Dist. 33, 35 (Orphans' Ct. Phila. Co. 1898). This is all that need be done. No further sanction, penalty or taint of illegality attaches to the testamentary writing by statute, decisional authority or considerations of public policy. Nor does the need to strike down an invalid provision prohibit a result (after the unlawful provision is legally disregarded)

---

[1] Section 9 of the Act of April 18, 1853, P. L. 503, 20 P.S. §3251, is applicable. It is repealed only as to conveyances effective on or after January 1, 1948.

which coincides with or is substantially the distribution testator sought to achieve by his will as written.

Testator's will, without the inoperative provision, expressed with unmistakable clarity and definiteness that his entire estate pass under his will and not by intestacy, in accordance with his plan of distribution: (1) a gift of a stated annual sum from income for life to his wife and children, and (2) a gift to his grandchildren of the entire remainder of his estate.

Surely, no principle in the law of decedents' estates is more firmly established than the right of the testator to dispose of all of his property by his will in accordance with his lawfully expressed intention. *Walton Estate*, 409 Pa. 225, 186 A. 2d 32 (1962).

Included in decedent's testamentary disposition of his entire estate is the accumulated income, and this he bequeathed to his grandchildren. Such income he specifically denied to the life beneficiaries by the clear terms of his will. Construing the will so that distribution is made to the life beneficiaries under the Intestate Act is, in effect, a rewriting of decedent's will, a right we have repeatedly held a court does not possess. See *Walton Estate*, supra.

Although testator sought to accumulate the excess income until the termination of the whole trust and to have it distributed then with the corpus, deletion of that invalid direction makes the accumulated income currently distributable. It is only his direction to defer distribution of excess income that is invalid and fails. His other directions, including the distribution of corpus at the termination of the trust is proper and operative. The income in controversy should, therefore, pass in accordance with the effective terms of the will to his grandchildren, even though distribution of the corpus is postponed until the end of the trust.

All grandchildren are living, and all have attained the age of twenty-one. Theirs is a vested interest in

the remainder (everything other than the specific annuities given to life tenants) with the right of immediate possession upon the termination of prior life estates. The accumulated income is not part of the life estates and is, therefore, presently distributable to the grandchildren who have the immediate right to possession and enjoyment of testator's gift which is not part of or affected by the life estates which he created. They alone are the beneficiaries for whom his trustee holds the accumulated income, and nothing stands between them and their present right to receive such income, except the illegal direction that it be accumulated. See *Thistle's Estate*, supra.

I would, therefore, reverse the decree below, approve the report of the auditor, and direct distribution of the accumulated income to testator's grandchildren as the residuary legatees in equal shares.